**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **MANTIS COMMUNICATIONS, LLC** <br> **Plaintiff,** <br> **v.** <br> **KMART CORPORATION,** <br> **Defendant.** | **Civil Action No. ____** <br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq*. in which Plaintiff Mantis Communications, LLC ("Mantis" or "Plaintiff") files this action against Defendant Kmart Corporation ("Kmart" or "Defendant") for infringing U.S. Patent Nos. 7,403,788 ("the '788 Patent"), 7,792,518 ("the '518 Patent"), 8,131,262 ("the '262 Patent"), 8,437,784 ("the '784 Patent"), 8,761,732 ("the '732 Patent"), 8,938,215 ("the '215 Patent"), and 9,092,803 ("the '803 Patent") (collectively, "patents-in-suit" or "Mantis patents").

**BACKGROUND**

1. Plaintiff Mantis is a Texas Limited Liability Company and is the owner by assignment of the patents-in-suit.

2. Companies including Defendant have adopted the inventions disclosed in the Mantis patents.

3. The Mantis patents have been cited in patents and patent applications filed by companies including: Research In Motion Limited, Motorola, Tekelec, and Visa.

4. The patents-in-suit share a common specification and are entitled "System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System." True and correct copies of the patents-in-suit are attached hereto as Exhibits A through G.

5. The patents-in-suit relate back to a provisional patent application dated July 19, 2002 (Provisional Application No. 60/397,435). The patents-in-suit claim specific systems and methods to enable organizations to execute direct marketing techniques and promotions by engaging users in a more convenient way by triggering interactions through their mobile communication devices.

6. The claims of the patents-in-suit are directed at a technical solution to solve a problem unique to computer communications networks and related devices – initiating a communication between an organization and a user of a mobile device triggered by an initial request or interaction by the user.

7. Use of a trigger system to initiate communication between an organization and a user using a mobile device presented new and unique advantages over the state of the art at the time. For example, although the wireless channel theoretically provided marketers a new ability to reach individuals in a time-sensitive way, there was a lack of standardization, and there was no practical way for a user's non-mobile-device interactions to trigger timely intercommunications with their mobile devices.

8. Although the systems and methods taught in the claims of the patents-in-suit have by today been widely adopted by leading businesses, at the time of the invention, the technologies taught in the claims of the patents-in-suit were innovative.

9. Further the claims of the patents-in-suit improved upon the functioning of communications interfaces and devices by providing for faster and easier methods to trigger a communication between an organization and user. For example, the claims of the patents-in-suit enable simple, fast, practical, and economical means to instantly deliver offers, coupons, promotions and other user-customized content to users on the go.

10. The claims of the patents-in-suit are not directed to a "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," or "a building block of the modern economy." Instead, they are limited to the narrow set of methods and systems for communications interfaces and devices.

11. The claims of the patents-in-suit are directed at very particular, narrow methods and systems for triggering a communication between an organization and a user using technologies unique to the mobile devices. The inventive concept in the claims of the patents-in-suit is a technological one rather than an entrepreneurial one. The use of a trigger system to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device is a specific solution to the technological problem of mobile electronic communications devices that lack standardization.

12. The claims of the patents-in-suit are directed toward a solution rooted in computer technology and use technology unique to computers and networks to overcome a problem specifically arising in the realm of communications devices on computer networks. For example, the claims of the patents-in-suit are directed toward using a triggering system in a computer network using electronic devices which are specifically configured to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily used by the communications methods of the prior art.

13. The use of a trigger system to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device was not a longstanding or fundamental economic practice at the time of invention of the patents-in-suit. The use of a trigger system to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device was not at the time of the invention a fundamental principle in ubiquitous use on the Internet or computers in general.

14. The claims of the patents-in-suit are not directed at a method for organizing human activity as the claims teach specific systems and methods for using triggering systems to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device.

15. The claims of the patents-in-suit are not directed at a mathematical relationship or formula as the claims teach specific systems and methods to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device.

16. The inventions claimed in the patents-in-suit go beyond manipulating, reorganizing, or collecting data by receiving information or a signal and generating content based on user request data thereby fundamentally altering information. One or more of the claims of the patents-in-suit require "transforming" data associated with the trigger system by receiving information or a signal and then generating content based on user request data. Therefore, the claimed features in the patents-in-suit fundamentally alter data and go beyond the mere collection, organization, manipulation, or reorganization of data.

17. One or more of the claims of the patents-in-suit require a specific trigger system to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device and are meaningful limitations that tie the claimed methods and systems to specific machines.

18. The claims of the patents-in-suit not only recite a process for generating content based on user requested data, the claims involve a protocol for using a trigger system to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device.

19. The claims of the patents-in-suit cannot be performed by a human, in the mind, or by pen and paper. The claims as a whole are directed to using a trigger system to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device. These limitations require a message application server that can communicate with a trigger system with a trigger client component and a trigger server component, wherein the message application server is capable of processing a trigger signal, deriving a mobile device address from at least one unique identifier, and generating content based on user request data – all elements that cannot be done by a human, in one's mind, or by paper and pencil.

20. The use of trigger systems to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device is not a conventional activity that humans engaged in before computers, nor is it a conventional activity that humans are capable of performing mentally or by pen and paper.

21. One or more of the claims of the patents-in-suit require a fixed step-by-step procedure using a trigger system for accomplishing the initiation of communications on electronic devices in order to enable targeted content delivery to a mobile device.

22. The prior art cited on the face of the patents-in-suit shows that the inventions disclosed in the claims of the patents-in-suit are not a patent ineligible abstract idea. The inventions taught in the claims of the patents-in-suit are narrower than the cited prior art, and therefore, are not an abstract idea. For example, none of the systems and methods described in the prior art discloses using a trigger to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device. Many of the claims of the patents-in-suit require the use of a trigger system to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device. This requirement is absent in the prior art and thus, the claims of the patents-in-suit are directed toward significantly more than an abstract idea and the claims of the patents-in-suit do not preempt the field of electronic communications or marketing.

23. The inventions in the claims of the patents-in-suit are rooted in computer technology and overcame a problem specifically arising in the realm of computer networks. At the time of the invention, limitations in the prior art that the patents-in-suit were directed to solve included the lack of standardization, the lack of convenience in triggering communications using prior art systems in a timely manner, as well as the lack of familiarity and cumbersome nature of initiating a communication using a mobile device.

24. The claims of the patents-in-suit require the use of a computer system. The use of a computer system plays a significant part in permitting the claimed methods to be performed. For example, the use of a trigger system to communicate with a message application server is integral to the success of targeted content delivery to a mobile device and can only be performed using a computer system. The use of a computer system using a trigger system and message application server is not merely an issue of processing data more quickly, it is integral to accomplishing targeted content delivery to a mobile device.

25. The claims of the patents-in-suit do not preempt a field or preclude the use of other effective targeted content delivery to mobile devices. The claims of the patents-in-suit include inventive elements such as the claimed trigger systems. The elements in the claims of the patents-in-suit greatly limit the breadth of the claims. These limitations are not necessary or obvious tools for achieving the initiation of communications on electronic devices in order to enable targeted content delivery to a mobile device, and they ensure that the claims do not preempt other techniques for targeted content delivery to mobile devices. Other techniques for targeted content delivery on mobile devices that would not be included in the scope of the claims of the patents-in-suit include at least the prior art on the face of the patents-in-suit.

26. The claims of the patents-in-suit do not preempt initiating communications on electronic devices in order to enable targeted content delivery to a mobile device, as other technologies are available.

27. The claims of the patents-in-suit not only recite a process for generating content based on user requested data, the claims involve a protocol for using a trigger system to initiate communications on electronic devices in order to enable targeted content delivery to a mobile device. The inventions disclosed in the claims of the patents-in-suit have a concrete effect in communication to a mobile device. The claims are directed to solving a technological problem of mobile electronic communications devices that lack standardization and usability. The prior art disclosed on the face of the patents-in-suit show that the claims of the patents-in-suit are directed at solving this problem using unconventional and novel techniques.

28. The use of a trigger system to initiate communications on electronic devices in order to enable targeted content deliver on a mobile device confers benefits on a computer system.

29. The claims of the patents-in-suit require steps that are not conventional or routine. The use of a trigger system to initiate communications on electronic devices in order to enable targeted content deliver on a mobile device was not ubiquitous at the time of the invention. Further, elements in the dependent claims of the patents-in-suit require additional steps that are not convention or routine.

## PARTIES

30. Mantis is a Texas Limited Liability Company with a principal place of business at 2600 Avenue K, Plano Texas 75074.

31. On information and belief, Kmart ("Kmart") is a Delaware corporation with its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179. On information and belief, Kmart is registered to do business in the State of Texas and it may be served with process by delivering a summons and a true and correct copy of this complaint to its registered agent for receipt of service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

## JURISDICTION AND VENUE

32. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

33. This Court has personal jurisdiction over Defendant because, among other reasons, Defendant has established minimum contacts with the forum state of Texas. Defendant, directly or through third-party intermediaries, makes, uses, imports, offers for sale, or sells products or services within the state of Texas, and particularly within the Eastern District of Texas. Defendant has purposefully availed itself of the benefits of doing business in the State of Texas and the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

34. Venue is proper in this District under 28 U.S.C. §§ 1391 (b)-(c) and 1400(b) because Defendant is subject to personal jurisdiction in this District, has transacted business in this district and has committed acts of patent infringement in this District.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 7,403,788

35. Mantis incorporates by reference paragraphs 1 through 34 of this Complaint.

36. Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the

United States products or services for targeted content delivery on a mobile device. Defendant's targeted content delivery products or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the '788 patent.

37. Defendant operates the Internet site http://www.kmart.com ("Kmart Site"). The Kmart Site is targeted to and accessible to Texas residents.

38. Defendant offers to its customers Kmart mobile applications, for example, mobile applications available on Android and iPhone products ("Kmart App"). The Kmart App is targeted to and accessible to Texas residents. Exemplary screenshots of the Kmart App and Kmart's offers of its mobile applications to consumers are provided below:

**Shop smarter**

- Find the right products faster and compare them by feature, price and user reviews.
- Find what you need and which stores near you carry it.
- See what Consumer Reports has to say about the products you shop.
- Smart browsing feature reminds you of items you've already looked at.

**Save more**

- Get alerted first to Bluelight Specials.
- Free is fun! Get your Free Friday Fix, only on the app.
- Save eCoupons to your profile.
- Get free shipping on literally every item you order while you're in the store.
- Make the most of Shop Your Way points, exclusive member coupons and more.




39. Defendant operates systems for sending marketing-related emails and text messages to consumers. On information and belief, defendant has sent marketing-related emails and text messages to Texas residents. The exemplary screen shots below depict Kmart marketing-related emails and text messages sent to a mobile device, and confirm that Kmart uses systems to send such emails and text messages:







40. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages comprise systems that enable targeted content delivery to a mobile device. Defendant's documents disclose, for example, activities adopted by Kmart for targeting promotional offers, coupons and advertisements to at least one of a mobile number, an e-mail address associated with the mobile device of the user, and the like. The exemplary screen shots below confirm that Kmart's systems deliver such targeted content to users:












41. Mobile devices that interact with the Kmart Site, Kmart App, or Kmart's systems for sending marketing-related emails and text messages have device addresses and are associated with unique identifiers.

42. The Kmart Site, Kmart App, or Kmart's systems for sending marketing-related emails and text messages comprise a message application server. The message application server communicates and processes messages to and from users. Defendant's documentation, for instance, discloses that it collects contact, payment, returns, demographic, location and other information. Kmart's documents disclose that "we may collect personally identifiable information ("PII" - for example, your full name, e-mail address, mailing address, telephone number, mobile phone number or credit card number) from you …." Additionally, Kmart documents disclose that "we also may collect other information about you, including, without limitation, demographic information (such as number of household members, age, and gender) and information about your purchase preferences."

43. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system in communication with the message application server that has a trigger client component configured to generate a trigger signal comprising a trigger action, user content request data, and at least one unique identifier. The Kmart app for instance generates a trigger signal comprising a trigger action (*e.g.*, a purchase request), user content request data (*e.g.*, the total price, or other purchasing relating information), and a unique identifier. Likewise, the Kmart site, and Kmart's systems for sending marketing-related emails and text messages comprise trigger client components. The exemplary screen shots below confirm such activities:







44. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system server that also has a trigger server component that communicates with the trigger client component and is configured to receive the trigger signal and send it to a message application server.

45. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages comprise an offer application component in communications with an offer entry system and an offer database for storing the generated contented and the user request data.

46. The offer entry system used in the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages is configured to redeem the generated content, generate content redemption information that includes the redeemed content, and send the content redemption information to the offer application component used for the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages for storage in the offer database.

47. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages notify users regarding their order status and the latest deals.

48. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages customize advertisements and content for users, for example, based on information collected and tracked regarding users' use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages.

49. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collect updated email addresses, mobile numbers, and message preferences from users, as confirmed by the exemplary screen shots below:






50. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collect information, including the users' IP address, and other personal information.

51. Defendant has directly infringed and continues to infringe the '788 Patent in this District and elsewhere in the United States by, among other things, making, using, offering for sale, or selling targeted content delivery products or services. Such targeted content delivery products or services include, by way of example and without limitation, use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages, which are covered by one or more claims of the '788 Patent, including but not limited to claim 1.

52. By making, using, offering for sale, or selling targeted content delivery products and/or services infringing the claims of the '788 Patent, Defendant has injured Mantis and is liable to Mantis for direct infringement of the claims of the '788 Patent pursuant to 35 U.S.C. § 271(a).

53. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '788 Patent.

54. As a result of Defendant's infringement of the '788 Patent, Mantis has suffered monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court, and Mantis will continue to suffer damages in the future

unless Defendant's infringing activities are enjoined by this Court.

55. Unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the claims of the '788 Patent, Mantis will be greatly and irreparably harmed.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 7,792,518**

56. Mantis incorporates by reference paragraphs 1 through 55 of this Complaint.

57. Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the United States products or services for targeted content delivery on a mobile device. Defendant's targeted content delivery products or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the '518 Patent.

58. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages comprise a trigger system that is configured to receive via a trigger device a unique identification identifier from a user of a mobile device, and transmit the unique identification identifier to an application server. The unique identification identifier is associated with the user and the mobile device, and is at least one of a number, data encoded on a magnetic strip of a card, a bar code, a Radio Frequency Identification tag including data, a client application including unique data, and a biometric identifier unique across a plurality of users.

59. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use an offer application system coupled with an application server to generate an offer based in part on a mobile device identification number and provide the offer to the application server for indication in the message sent to the mobile device. The exemplary screen shots below depict such offers:







60. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use an offer entry system coupled with the offer application system to receive and validate the offer when the offer is redeemed by a user.

61. The application server used in conjunction with the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages is configured to retrieve a mobile device identification number and cause a message to be sent to the user through a mobile device. The mobile device identification number is associated with the unique identification identifier and identifies the mobile device.

62. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages notify users regarding their order status and offers, as confirmed in the exemplary screen shots below:

Shop smarter

- Find the right products faster and compare them by feature, price and user reviews.
- Find what you need and which stores near you carry it.
- See what Consumer Reports has to say about the products you shop.
- Smart browsing feature reminds you of items you've already looked at.

Save more

- Get alerted first to Bluelight Specials.
- Free is fun! Get your Free Friday Fix, only on the app.
- Save eCoupons to your profile.
- Get free shipping on literally every item you order while you're in the store.
- Make the most of Shop Your Way points, exclusive member coupons and more.




63. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages customize advertisements and content for the users, for example, based

on information collected and tracked regarding users' use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages.

64. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collect updated email addresses, mobile numbers, and message preferences from users.

65. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collects information, including the users' IP address, and other personal information, as depicted in the exemplary screen shots below:













66. Defendant has directly infringed and continues to infringe the '518 Patent in this District and elsewhere in the United States by, among other things, making, using, offering for sale, or selling targeted content delivery products or services. Such targeted content delivery products or services include, by way of example and without limitation, use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages, which are covered by one or more claims of the '518 Patent, including but not limited to claim 1.

67. By making, using, offering for sale, or selling target content delivery products or services infringing the claims of the '518 Patent, Defendant has injured Mantis and is liable to

Mantis for direct infringement of the claims of the ’518 Patent pursuant to 35 U.S.C. § 271(a).

68. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the ’518 Patent.

69. As a result of Defendant’s infringement of the ’518 Patent, Mantis has suffered monetary damages in an amount adequate to compensate for Defendant’s infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court, and Mantis will continue to suffer damages in the future unless Defendant’s infringing activities are enjoined by this Court.

70. Unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the claims of the ’518 Patent, Mantis will be greatly and irreparably harmed.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,131,262

71. Mantis incorporates by reference paragraphs 1 through 70 of this Complaint.

72. Defendant makes, uses, sells, or offers for sale in the United States products or services for targeted content delivery on a mobile device. Defendant’s targeted content delivery products or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the ’262 Patent.

73. The Kmart Site, Kmart App, and Kmart’s systems for sending marketing-related emails and text messages enable targeted content delivery to a mobile device. The mobile devices have a device address and at least one associated unique identifier.

74. The Kmart Site, Kmart App, or Kmart’s systems for sending marketing-related emails and text messages comprise a message application server. The message application server communicates and processes messages to and from users. Defendant’s documentation, for instance, discloses that it collects contact, payment, returns, demographic, location and other information. Kmart’s documents disclose that “we may collect personally identifiable information ("PII" - for example, your full name, e-mail address, mailing address, telephone number, mobile

phone number or credit card number) from you …." Additionally, Kmart documents disclose that "we also may collect other information about you, including, without limitation, demographic information (such as number of household members, age, and gender) and information about your purchase preferences," as confirmed in the exemplary screen shots below:










75. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system server that has a trigger client component configured to generate a trigger signal, where the trigger signal includes at least a trigger action, user content request data, and at least one unique identifier.

76. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system that also has a trigger server component, such as a web server, that communicates with the trigger client component, such as a user's web browser, and is configured to receive the trigger signal and send it to a message application server.

77. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a message application server configured to receive a trigger signal, derive a mobile device address from at least one unique identifier, generate content based on a user request data, and send the generated content to the device address of a mobile device. The

generated content includes one or more graphical images representing a promotional offer, such as depicted in the exemplary screen shots below:

78. The trigger system server used in the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages communicates with the message application server.

79. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages notifies users regarding their order status and the offers, as confirmed by the screen shot below:




80. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages customizes advertisements and content for the users, for example, based on information collected and tracked regarding users' use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages.

81. Through use of the Kmart Site, Kmart App, and Kmart's systems for sending

marketing-related emails and text messages, users may update email addresses, mobile numbers, and message preferences.

82. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collect information, including the users' IP address, and other personal information.

83. Defendant has directly infringed and continues to infringe the '262 Patent in this District and elsewhere in the United States by, among other things, making, using, offering for sale, or selling target content delivery products or services. Such target content delivery products or services include, by way of example and without limitation, use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages, which are covered by one or more claims of the '262 Patent, including but not limited to claim 1.

84. By making, using, offering for sale, or selling target content delivery products or services infringing the claims of the '262 Patent, Defendant has injured Mantis and is liable to Mantis for direct infringement of the claims of the '262 Patent pursuant to 35 U.S.C. § 271(a).

85. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '262 Patent.

86. As a result of Defendant's infringement of the '262 Patent, Mantis has suffered monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court, and Mantis will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.

87. Unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the claims of the '262 Patent, Mantis will be greatly and irreparably harmed.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 8,437,784

88. Mantis incorporates by reference paragraphs 1 through 87 of this Complaint.

89. Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the United States products or services for targeted content delivery on a mobile device. Defendant's targeted content delivery products or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the '784 patent.

90. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages enable targeted content delivery to a mobile device. A mobile device has a device address and at least one associated unique identifier.

91. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system server that has a trigger client component configured to generate a trigger signal, where the trigger signal includes at least a trigger action, user content request data, and at least one unique identifier.

92. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system server that also has a trigger server component that communicates with the trigger client component and is configured to receive the trigger signal and send it to a message application server.

93. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a message application server configured to receive a trigger signal, derive a mobile device address from at least one unique identifier, generate content based on a user request data, and send the generated content to the device address of a mobile device. The generated content includes redemption information related to an offer, as depicted in the exemplary screen shots below:







94. The trigger system server used in the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages communicate with the message application server used in the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages.

95. The message application server notifies users regarding their order status and the offers.

96. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages customize advertisements and content for the users, for example, based on information collected and tracked regarding users' use of Kmart Site or Kmart App.

97. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collect updated email addresses for mobile devices, mobile device numbers or identifiers, and message preferences.

98. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collect information, including the users' IP address and other personal

information, as confirmed by the exemplary screen shots below:













99. Defendant has directly infringed and continues to infringe the ’784 Patent in this District and elsewhere in the United States by, among other things, making, using, offering for sale, or selling target content delivery products or services. Such target content delivery products or services include, by way of example and without limitation, use of the Kmart Site, Kmart App, and Kmart’s systems for sending marketing-related emails and text messages, which are covered by one or more claims of the ’784 Patent, including but not limited to claim 1.

100. By making, using, offering for sale, or selling target content delivery products or services infringing the claims of the ’784 Patent, Defendant has injured Mantis and is liable to Mantis for direct infringement of the claims of the ’784 Patent pursuant to 35 U.S.C. § 271(a).

101. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the ’784 Patent.

102. As a result of Defendant’s infringement of the ’784 Patent, Mantis has suffered monetary damages in an amount adequate to compensate for Defendant’s infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court, and Mantis will continue to suffer damages in the future

unless Defendant's infringing activities are enjoined by this Court.

103. Unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the claims of the '784 Patent, Mantis will be greatly and irreparably harmed.

**COUNT V**

**INFRINGEMENT OF U.S. PATENT NO. 8,761,732**

104. Mantis references and incorporates by reference paragraphs 1 through 103 of this Complaint.

105. Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the United States products or services for targeted content delivery on a mobile device. Defendant's targeted content delivery products or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the '732 Patent.

106. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages enable targeted content delivery to a mobile device. Each mobile device has a device address and at least one associated unique identifier.

107. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system server that has a trigger client component configured to generate a trigger signal, where the trigger signal includes at least a trigger action, user content request data, and at least one unique identifier.

108. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system server that also has a trigger server component that communicates with the trigger client component and is configured to receive the trigger signal and send it to a message application server.

109. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a message application server configured to receive a trigger signal, derive a mobile device address from at least one unique identifier, generate content based on a user request data, and send the generated content to the device address of a mobile device. The

generated content includes customer relationship management information or a graphical image, as depicted in the exemplary screen shots below:










110. The trigger system server used in the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages communicates with the message application server used in the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages.

111. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages notify users regarding their order status and the latest deals.

112. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages customize advertisements and content for the users, for example, based on information collected and tracked regarding users' use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages.

113. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related

emails and text messages provide users a way to update email addresses, mobile numbers, and message preferences, as depicted in the exemplary screen shots below:







114. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collect information, including the users' IP address, and other personal

information.

115. Defendant has directly infringed and continues to infringe the ’732 Patent in this District and elsewhere in the United States by, among other things, making, using, offering for sale, or selling target content delivery products or services. Such targeted content delivery products or services include, by way of example and without limitation, use of the Kmart Site, Kmart App, and Kmart’s systems for sending marketing-related emails and text messages, which are covered by one or more claims of the ’732 Patent, including but not limited to claim 1.

116. By making, using, offering for sale, or selling targeted content delivery products or services infringing the claims of the ’732 Patent, Defendant has injured Mantis and is liable to Mantis for direct infringement of the claims of the ’732 Patent pursuant to 35 U.S.C. § 271(a).

117. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the ’732 Patent.

118. As a result of Defendant’s infringement of the ’732 Patent, Mantis has suffered monetary damages in an amount adequate to compensate for Defendant’s infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court, and Mantis will continue to suffer damages in the future unless Defendant’s infringing activities are enjoined by this Court.

119. Unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the claims of the ’732 Patent, Mantis will be greatly and irreparably harmed.

## COUNT VI

## INFRINGEMENT OF U.S. PATENT NO. 8,938,215

120. Mantis incorporates by reference paragraphs 1 through 119 of this Complaint.

121. Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the United States products or services for targeted content delivery on a mobile device. Defendant’s targeted content delivery products or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the ’215 Patent.

122. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system server that has a trigger client component configured to generate a trigger signal, where the trigger signal includes at least a trigger action, user content request data, and at least one unique identifier.

123. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system server that also has a trigger server component that communicates with the trigger client component and is configured to receive the trigger signal and send it to a message application server.

124. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a message application server configured to receive a trigger signal, derive a mobile device address from at least one unique identifier, generate content based on a user request data, and send the generated content to the device address of a mobile device. The generated content includes verification data, such as depicted in the exemplary screen shots below:







125. The trigger system server used in the Kmart Site, Kmart App, and Kmart's systems

for sending marketing-related emails and text messages communicates with the message application server used in the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages.

126. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages notify users regarding their order status and the latest deals.

127. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages customize advertisements and content for the users, for example, based on information collected and tracked regarding users' use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages, as confirmed by the exemplary screen shots below:




128. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages users may update email addresses, mobile numbers, and message preferences.

129. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collects information, including the users' IP address, and other personal information.

130. Defendant has directly infringed and continues to infringe the '215 Patent in this

District and elsewhere in the United States by, among other things, making, using, offering for sale, or selling target content delivery products or services. Such targeted content delivery products or services include, by way of example and without limitation, use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages, which are covered by one or more claims of the '215 Patent, including but not limited to claim 1.

131. By making, using, offering for sale, or selling targeted content delivery products or services infringing the claims of the '215 Patent, Defendant has injured Mantis and is liable to Mantis for direct infringement of the claims of the '215 Patent pursuant to 35 U.S.C. § 271(a).

132. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '215 Patent.

133. As a result of Defendant's infringement of the '215 Patent, Mantis has suffered monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court, and Mantis will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.

134. Unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the claims of the '215 Patent, Mantis will be greatly and irreparably harmed.

**COUNT VII**

**INFRINGEMENT OF U.S. PATENT NO. 9,092,803**

135. Mantis references and incorporates by reference paragraphs 1 through 134 of this Complaint.

136. Defendant makes, uses, sells, or offers for sale in this District and elsewhere in the United States products or services for targeted content delivery on a mobile device. Defendant's targeted content delivery products or services provide or support enabling targeted content delivery to a mobile device as described and claimed in the '803 Patent.

137. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related

emails and text messages enable targeted content delivery to a mobile device. The mobile devices have a device address and at least one associated unique identifier.

138. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system that has a trigger client component, such as a user's web browser, configured to generate a trigger signal, where the trigger signal includes at least a trigger action, user content request data, and at least one unique identifier.

139. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a trigger system server that also has a trigger server component that communicates with the trigger client component and is configured to receive the trigger signal and send it to a message application server. The trigger server component may comprise a web server.

140. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages use a message application server configured to receive a trigger signal, derive a mobile device address from at least one unique identifier, generate content based on a user request data, and send the generated content to the device address of a mobile device.

141. The trigger system server used in the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages communicates with the message application server used in the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages.

142. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages notifies users regarding their order status and offers, as confirmed in the exemplary screen shot below:




143. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages customizes advertisements and content for the users, for example, based on information collected and tracked regarding users' use of Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages, as confirmed by the exemplary screen shots below:










144. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collect updated email addresses, mobile numbers, and message preferences from users.

145. The Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages collect information, including the users' IP address, and other personal information.

146. Defendant has directly infringed and continues to infringe the '803 Patent in this District and elsewhere in the United States by, among other things, making, using, offering for sale, or selling targeted content delivery products or services. Such targeted content delivery products or services include, by way of example and without limitation, use of the Kmart Site, Kmart App, and Kmart's systems for sending marketing-related emails and text messages, which are covered by one or more claims of the '803 Patent, including but not limited to claim 1.

147. By making, using, offering for sale, or selling target content delivery products or services infringing the claims of the '803 Patent, Defendant has injured Mantis and is liable to Mantis for direct infringement of the claims of the '803 Patent pursuant to 35 U.S.C. § 271(a).

148. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '803 Patent.

149. As a result of Defendant's infringement of the '803 Patent, Mantis has suffered monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court, and Mantis will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.

150. Unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the claims of the '803 Patent, Mantis will be greatly and irreparably harmed.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief from this Court:

A. That Defendant has directly infringed the '788, '518, '262, '784, '732, '215, and '803 patents;

B. That Defendant and any of its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for any of them or on any of their behalf, or acting in concert with any of them directly or indirectly, be enjoined from infringing the '788, '518, '262, '784, '732, '215, and '803 patents;

C. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or participation with Defendant, from infringing the '788, '518, '262, '784, '732, '215, and '803 patents;

D. That Defendant be ordered to pay damages to Mantis, together with costs, expenses, pre-judgment interest and post-judgment interest as allowed by law;

E. That Defendant be ordered to provide an accounting;

F. That Defendant be ordered to pay supplemental damages to Mantis, including without limitation interest;

G. That Defendant's infringement be adjudged willful;

H. That the damages for Defendant be increased under 35 U.S.C. § 284 to three times

the amount found or assessed;

I. That the Court enter judgment against Defendant, and in favor of Mantis in all respects;

J. That the Court determine this is an exceptional case under 35 U.S.C. § 285 and an award of attorneys' fees and costs to Mantis is warranted in this action; and

K. For any such other and further relief as the Court deems just and equitable.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mantis requests a trial by jury of any issues so triable by right.

Dated: June 17, 2016

Respectfully submitted,

/s/*Benjamin T. Wang*

Benjamin T. Wang (CA SB No. 228712)
Adam S. Hoffman (CA SB No. 218740)
Jacob R. Buczko (CA SB No. 269408)
RUSS AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Telephone: 310-826-7474
Facsimile: 310-826-6991
E-mail: bwang@raklaw.com
E-mail: ahoffman@raklaw.com
E-mail: jbuczko@raklaw.com

Elizabeth DeRieux
State Bar No. 05770585
D. Jeffrey Rambin
State Bar No. 00791478
CAPSHAW DERIEUX LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: 903-845-5770
Email: ederieux@capshawlaw.com
Email: jrambin@capshawlaw.com

Attorneys for Plaintiff,
*Mantis Communications, LLC*